MERRITT, Circuit Judge, concurring.
The argument that persuades Judge Nelson to dissent is not that the intent of the framers of the Establishment Clause, or the evolving principles of separation of church and state over the last 200 years, or the reasoning of a Supreme Court case supports the constitutionality of Ohio's official motto. No argument based on principle or the constitutional policy underlying the Establishment Clause is advanced. "With God, All Things Are Possible" would be placed on public buildings, state banners and public documents and publications without any serious attempt to justify such state conduct on the basis of principle.
The real reason behind this state action adopting a religious verse from the New Testament seems purely political: To please certain politically influential religious groups. Madison, the draftsman of and the guiding hand behind the First *728 Amendment, was not wrong when he predicted that such religious and political “coalitions” would develop in the new Republic and that a fundamental law should be adopted to deter government and religious groups from the “tendency to a usurpation on one side or the other, or to a corrupting coalition or alliance between them.” IX The Writings of James Madison, 487 (G. Hunt ed.1910).
The argument of the State of Ohio and the dissent is simplistic: “With God, All Things Are Possible” is harmless and means approximately the same thing as “In God We Trust.” Since “in God We Trust” is so innocuous that it appears on all of the coin of the realm — all of our paper currency and silver — it must be constitutional and thus it must also be constitutional to require Ohio’s official biblical verse to be placed on buildings and official publications. The argument is a simple syllogism: “In God We Trust” is constitutional and it equals “With God, All Things Are Possible” and hence the latter must also be constitutional.
This argument is misguided for a large number of reasons, three of which I will discuss.
First. Ohio’s biblical motto does not meet the Establishment Clause test of “an equal liberty of conscience for all” set out by our court in an Establishment Clause case decided more than a decade ago. It fails because it is an effort of political and religious groups “to use the state in support of their particular beliefs.” We stated this principle of “equal liberty” as follows:
From the beginning of the colonial period to the present, American churches have taken their various religious differences seriously, and under the Free Exercise- and .Establishment clauses taken together, we have generally accepted and settled on an accommodation. The concept of the equal liberty of conscience is our guiding principle. In our national and community life, we can never be sure whether our particular religious, sectarian and moral convictions will be in the majority or the minority. So as a diverse people we have rejected the notion of a confessional state that supports religion in favor of a neutral state designed to foster the most extensive liberty of conscience compatible with a similar or equal liberty for others. To those who act or argue against this principle of equal liberty of conscience on grounds that their duty is to use the state in support of their particular beliefs, we answer that we cannot expect others to accept an inferior liberty. To those who say that the principle of equal liberty of conscience has the effect of rejecting the absolute nature of their religious beliefs, we reply that if any principle can be agreed to, it can only be that of an equal liberty of conscience for all.
Ohio’s biblical motto test tends to establish a “confessional state” and is therefore invalid. Stein v. Plainwell Community Schools, 822 F.2d 1406, 1408 (6th Cir.1987).
Second. The words “With God, All Things Are Possible” have meaning. The most obvious primary meaning of the words is that a personal, all-knowing, all-powerful God intervenes in the daily affairs of individuals and through this miracle of supernatural intervention makes “all things possible.” The secondary meaning, or the connotation of the words, as Judge Cohn’s opinion for the Court makes clear, comes from the context from which the words were taken. Salvation, eternal life and “treasure in heaven” can only be achieved in one way:
Jesus said unto him, if thou wilt be perfect, go and sell that thou hast, and give to the poor, and thou shalt have treasure in heaven; and come and follow me.
But when the young man heard that saying, he went away sorrowful; for he had great possessions.
Then said Jesus unto his disciples, Verily I say unto you, That a rich man *729 shall hardly enter into the kingdom of heaven.
And again I say unto you, It is easier for a camel to go through the eye of a needle than for a rich man to enter into the kingdom of God.
When his disciples heard it, they were exceedingly amazed, saying, Who then can be saved?
But Jesus beheld them, and said unto them, With men this is impossible; but with God all things are possible.
Matthew 19:21-26 (emphasis added).
Most of the world’s many religions and some Christian sects, denominations and theologians believe that neither the primary nor the secondary meaning of the words of Ohio’s biblical motto is true. Although many Christian believers accept these verses as true, others do not believe that a powerful, all-knowing personal God intervenes in daily affairs. They do not believe literally in the type of personalized salvation expressed by Matthew. In addition, many skeptics and nonbelievers hold that this state imposed biblical verse is untrue. For example, the Scientific American recently reported a survey of the 1800 members of the National Academy of Sciences which shows that over 90 per cent of the Academy — created by Congress in 1868 — do not believe in a personal God who intervenes in the affairs of human beings. E. Larson and L. Whitham, “Scientists and Religion in America,” Scientific American (Sept.1999).
Third. Whatever may be the meaning of the phrase, “In God We Trust” on the coin of the realm, it does not specify a personal, all-powerful, all-knowing God which makes “all things possible” by intervening in daily affairs. It does not necessarily run contrary to the religious beliefs of any particular Christian denomination or group or any other religion. It may not be entirely consistent with the views of the National Academy of Sciences and nonbelievers, but it is not particularly offensive. The god in whom we “trust” could be the god of Jefferson’s deism or even perhaps the laws of science or the cosmology of Newton or Einstein. The phrase is sufficiently vague that it does not define the particular god of any religion. Neither does it have a secondary meaning, a connotation, a context, that requires that all of the coin of the realm on which the phrase appears be “give[n] to the poor” in order for the “rich man to enter into the kingdom of God.” The god of the silver coin and the dollar bill — “In Whom We Trust” — may be merely mammon or may be drawn from any of the gods in the world’s vast pantheon of divinity that has accumulated from Greek times to the present. The god of the coin of the realm is not by any means the “God” of Matthew 19:21-26, who makes “all things possible,” a God who disapproves of mammon, and who through his son, Jesus Christ, reportedly threw the money changers out of the temple. The God of Ohio’s biblical motto is the God of particular Christian religious groups. The God of Ohio’s biblical motto prefers one set of groups and one theology over another, a God who excludes nonbelievers and many other Christians from being “saved” and from entering “into the kingdom of heaven.” In the biblical passage from which Ohio’s motto takes its meaning, “treasure in heaven” and God’s approval can only come if the believer will, in the words of Jesus, “follow me” and “be saved.” Thus Ohio’s motto is unconstitutional under the Establishment Clause because it discriminates among religions and groups within the Christian religion and encourages a particular Christian doctrine. It violates the Establishment Clause because it does not meet the test set out by Madison’s colleague, Elbridge Gerry, expressed in the congressional debates on the Establishment Clause “that no religious doctrine shall be established by law,” — a major principle underlying the “equal liberty of conscience” that the framers intended to enact. 1 Annals of Congress 729.
For these reasons and the reasons set out in Judge Cohn’s well-researched opinion for the Court, Ohio’s legislated motto *730 “With God, All Things Are Possible” must be declared in violation of the Establishment Clause of the First Amendment of the Constitution of the United States.